**BUDD COMPANY**

v.

**UNITED STATES of America,
Appellant.**

**No. 12304.**

United States Court of Appeals
Third Circuit.

Argued Oct. 25, 1957.

Decided Nov. 27, 1957.

Harold K. Wood, U. S. Atty., Allen J. Swotes, Asst. U. S. Atty., Philadelphia, Pa. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Attys. Dept. of Justice, Washington, D. C., on the brief), for appellant.

Drinker Biddle & Reath, Philadelphia, Pa. (Calvin H. Rankin, James J. Cloran, Ernest L. Nagy, Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, KALODNER and STALEY, Circuit Judges.

GOODRICH, Circuit Judge.

The Budd Company, a Pennsylvania corporation, seeks in this action to recover 1947 income tax which it has paid and for which a claim for refund was filed in the amount of $2,796,918.28 including interest. The plaintiff was successful in the trial court (D.C.E.D.Pa.1957, 148 F. Supp. 792), and the United States appeals.

The facts present no difficulty, except to understand their significance. Indeed, they were largely stipulated. The law involved is the Internal Revenue Code of 1939, especially the carry-back and carry-over rules set out in § 122, 26 U.S.C. § 122.

There was a full finding of facts by the district court. Only those will be repeated here which are necessary to pose the legal point involved.

In 1946, the taxpayer sustained a net operating loss of more than ten million dollars. Under sections 23(s) and 122 (b) (1) (A) of the 1939 Code,[1] Budd was entitled to carry back this loss as a deduction for 1944. Since the 1946 loss was greater than the 1944 income, all the 1944 taxes were subject to a claim for refund. In 1947 the taxpayer applied for and received in cash all its 1944 excess profits taxes not already received as a renegotiation credit or otherwise.

In 1945 the taxpayer sustained a net operating loss, but it is agreed that we are not concerned with its application here.

It is the second application of the 1946 loss, by way of carry-over deduction from 1947 income, which makes our case here. Section 122(b) (2) authorizes a carry-over of that portion of the 1946 loss which exceeded "net income" for 1944. And in computing 1944 "net income" for this purpose, § 122(b) (2) allowed a taxpayer to take certain adjustments, including a deduction, under § 122(d) (6), of its 1944 excess profits taxes. As originally accrued these were something over eight million dollars. So computed, its net income under § 122(b) (2) was something more than one and one-half million. Therefore, taxpayer was entitled to carry over the difference between this figure and its 1946 net operating loss. Since this carry-over deduction exceeded the 1947 income, Budd contends that it is entitled to a refund of all its 1947 taxes, and so thought the district court.

The Government, however, disputes this even with the embarrassing prece-

---

1. Int.Rev.Code of 1939, § 23(s):

"(s) Net operating loss deduction. For any taxable year beginning after December 31, 1939, the net operating loss deduction computed under section 122."

Id. § 122(b) (1) (A):

"(b) Amount of carry-back and carry-over.

"(1) Net operating loss carry-back.

"(A) Loss for taxable year beginning before 1950. If for any taxable year beginning after December 31, 1941, and before January 1, 1950, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-back for each of the two preceding taxable years, except that the carry-back in the case of the first preceding taxable year shall be the excess, if any, of the amount of such net operating loss over the net income for the second preceding taxable year computed—

"(i) with the exceptions, additions, and limitations provided in subsection (d) (1), (2), (4), and (6), and

"(ii) by determining the net operating loss deduction for such second preceding taxable year without regard to such net operating loss and without regard to any reduction specified in subsection (e)."

dent of Lewyt Corp. v. Commissioner, 1955, 349 U.S. 237, 75 S.Ct. 736, 99 L.Ed. 1029, which bears upon §§ 122(b) (1) and 122(d) (6). In that case the Government argued that the taxpayer, having recovered part of his money paid as 1944 excess profits taxes, due to the first application of the 1946 net operating loss, should not be able to utilize that amount as a reduction of the 1944 net income in computing the carry-back of that loss to 1945. The Court held otherwise. The opinion was narrowly based on the reasoning that § 122(d) (6) permitted the reduction from 1944 income of taxes accrued in 1944 and that figure could not be affected by events occurring in later years, even if they resulted in less taxes ultimately found to be due. As a result of this decision a larger portion of the loss remained unabsorbed and available for the second application as a carry-back in 1945.

Finding itself defeated on this approach, the Government now attacks the problem from another direction. Here it concedes that the appellee is entitled under Lewyt to use the full amount of its 1944 excess profits tax in computations which eventually culminate in a reduction of its 1947 tax. However, the United States now contends that the taxpayer, having obtained this tax benefit from the 1944 tax, should be required to account for that part of the tax which it has gotten back from the Treasury as income either in 1946 when the refund accrued or in 1947 when it was actually paid. In either case should it succeed the Government would be able to achieve substantially the same goal that it failed to gain in the Supreme Court. This is most apparent considering the income as accrued in 1946, since the net operating loss would thereby be directly decreased. By the second alternative the loss would remain quantitatively the same, but of less effect in reducing 1947 taxes, in that there would be more income to offset.

In support of its argument the Government urges that the "tax benefit" doctrine should induce this Court, notwithstanding the conclusion reached in

Lewyt, to deny a recovery for the plaintiff. The rationale of this judicially created rule, the argument runs, is to prevent the unjust enrichment that would occur by leaving untaxed a refund previously paid which has also been utilized to diminish taxable income. But applying broad equitable considerations to problems raised by a tax statute is dangerous business, at least for an intermediate court. We were reversed for doing so in Rothensies v. Electric Storage Battery Co., 1946, 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296, reversing 3 Cir., 1945, 152 F.2d 521.

The literal directions given by the statute applicable here allow the taxpayer to do just what the district court said it could do. In fact, a similar contention was made in the Lewyt case and the majority opinion by Mr. Justice Douglas uses language concerning the point which we think should be the guide for us. It is:

"But the rule that general equitable considerations do not control the measure of deductions or tax benefits cuts both ways. It is as applicable to the Government as to the taxpayer. Congress may be strict or lavish in its allowance of deductions or tax benefits. The formula it writes may be arbitrary and harsh in its applications. But where the benefit claimed by the taxpayer is fairly within the statutory language and the construction sought is in harmony with the statute as an organic whole, the benefits will not be withheld from the taxpayer though they represent an unexpected windfall." Lewyt Corp. v. Commissioner, supra, 349 U.S. at page 240, 75 S.Ct. at page 739.

Not only is this the Supreme Court's answer to the general line of argument, but we have an express decision from the Court of Claims in National Forge & Ordnance Co. v. United States, 1957, 151 F.Supp. 937, on all fours with our problem here. The Court of Claims decided the case against the Government. The appellant's brief in this case not un-

naturally disagrees with the Court of Claims result and attributes it to a lack of understanding on the part of the court of the purpose of the computations under § 122(b). It may or may not be the case that the court misread the intention of the section. We have not been able to find any material which leads us to a satisfactory conclusion about that intention.[2]

■ We do not know whether Congress was advertent or inadvertent in the choice of language quoted above. We do know that the application of the statutory words does call for the application which the district judge reached.

The Government says that even though if wrong on its first point, Budd is still precluded from recovery as to $800,000 because of the running of the statute of limitations. The statute in question is § 322(b) (2) (A) of the 1939 Code. This reads as follows:

"Limit on amount of credit or refund. The amount of the credit or refund shall not exceed the portion of the tax paid—

"(A) If a return was filed by the taxpayer, and the claim was filed within three years from the time the return was filed, during the three years immediately preceding the filing of the claim."

The question here is whether the taxpayer had "paid" two of the installments on account of the tax more than the requisite three years preceding the filing of the claim for refund on July 11, 1951.

The plaintiff, prior to March 15, 1948, requested and got an extension of time for the filing of its 1947 tax return to May 15, 1948, and subsequently to June 15, 1948. But back on the 15th of March the taxpayer filed a form marked "tentative." This form showed no items of income or deduction but merely stated an "estimated" tax due of $1,600,000. On this day a check was sent to the collector

in the amount of $400,000 and on June 15th another check of $400,000 was sent. The collector credited the amounts to a "suspense" account.

On July 13, 1948, the taxpayer filed with the collector a completed 1947 return showing an income tax which, according to it, was $1,616,277.36. Following this an account was set up on the collector's books and the plaintiff was debited with the amount of income tax liability shown on its final return. It was also credited with the $800,000 which theretofore had been carried in the suspense account. Then the collector prepared his assessment list on which he placed the proposed assessment against the plaintiff for the amount which it had shown on its tax return plus a small amount of interest but minus the sum credited. The assessment certificate which was attached to the list was signed by the commissioner September 27, 1948.

■ The legal question involved from these facts is whether the two checks of $400,000 each were "payments" under the statute so that claim for refund had to be made within three years of the date of sending the checks to the collector. We think it clear from two decisions that the sending of money under these circumstances was not such a payment as to start the running of the statute against the taxpayer. This was our decision in Busser v. United States, 3 Cir., 1942, 130 F.2d 537 when the shoe was on the other foot. There the taxpayer sought to get interest on money sent to the collector under comparable circumstances and this Court said that the check sent was not a "payment."

The Busser case was cited in the opinion by Mr. Justice Frankfurter in Rosenman v. United States, 1945, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535. The language of Mr. Justice Frankfurter is apposite. On page 662 of 323 U.S., on page 538 of 65 S.Ct. of the opinion he says:

2. And, seemingly, neither has the Supreme Court. See Mr. Justice Frankfurter's dissent in Lewyt Corp. v. Commissioner, 1955, 349 U.S. 237, 247–248, 75 S.Ct. 736, 99 L.Ed. 1029.

"The Government does not consider such advances of estimated taxes as tax payments. They are, as it were, payments in escrow. They are set aside, as we have noted, in special suspense accounts established for depositing money received when no assessment is then outstanding against the taxpayer. The receipt by the Government of moneys under such an arrangement carries no more significance than would the giving of a surety bond. Money in these accounts is held not as taxes duly collected are held but as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due."

The Court's opinion concludes with these words:

"The construction which in our view the statute compels safeguards the interests of the Government, interprets a business transaction according to its tenor, and avoids gratuitous resentment in the relations between Treasury and taxpayer."

It is true that these two cases involved the federal estate tax and the present case involves income tax. We see no reason for making a distinction between them. In each case the collecting officer sets up a "suspense" account and we think that the Supreme Court's statements in the Rosenman case are clearly applicable here.[3]

■ Nor can it make any difference, we think, that the amount estimated by Budd in sending the two $400,000 checks came out very closely to what the final return showed the company thought its 1947 tax was going to be. Its estimate proved not to satisfy the Government because a deficiency assessment of $1,-180,465 followed later. Any argument made on the basis of Budd's case as to the accuracy of its tax seems to us, therefore, to go out of the window.

The Government makes the further argument that § 3770(c) of the 1939 Code is in point here. That provision reads:

"An amount paid as tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid."

We think the section does not control this situation. United States v. Dubuque Packing Co., 8 Cir., 1956, 233 F.2d 453; Thomas v. Mercantile Nat. Bank, 5 Cir., 1953, 204 F.2d 943.

The judgment of the district court will be affirmed.

---

3. See also Lewyt Corp. v. Commissioner, 2 Cir., 1954, 215 F.2d 518, 522–523.