**Harry J. BINDER, Appellant,**

v.

**UNITED STATES of America.**

**No. 78–1391.**

United States Court of Appeals, Third Circuit.

Argued Oct. 17, 1978.

Decided Dec. 15, 1978.

Abraham J. Brem Levy, George P. Walker, Philadelphia, Pa., for appellant.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Michael L. Paup, Aaron Rosenfeld, Tax Div., Dept. of Justice, Washington, D. C., for appellee; Robert N. De Luca, Asst. U. S. Atty., Philadelphia, Pa., of counsel.

Before WEIS and GARTH, Circuit Judges, and WYZANSKI,* Senior District Judge.

* Honorable Charles Edward Wyzanski, Jr., United States Senior District Judge, for the District of Massachusetts, sitting by designation.

## OPINION

WYZANSKI, Senior District Judge.

Taxpayer Binder appeals from the District Court's judgment dismissing, under Fed.R.Civ.P. 12(b)(6), his complaint on the ground that he has not stated a claim upon which relief can be granted.

Plaintiff construes his complaint as alleging a cause of action, within the jurisdiction conferred by 28 U.S.C. § 1340 and 26 U.S.C. § 7422, for the recovery of moneys which he and his employer paid to the District Director of Internal Revenue as escrow payments of estimated income taxes and withholding taxes which plaintiff might owe for the years 1966 and 1971.

The government contends that the only facts alleged in the complaint contradict plaintiff's claim that he or his employer made escrow payments, but, on the contrary, set forth a claim for the refund of tax payments which is defective because the claim was not made within the time limited by § 6511(b)(2)(A) of the Internal Revenue Code of 1954, 26 U.S.C. § 6511(b)(2)(A).

The District Court construed plaintiff's complaint as stating merely a purported claim to recover advance payment of taxes, and held the claim barred by 26 U.S.C. § 6511 and § 6513.

For convenience we here set forth the relevant parts of § 6511 of the Internal Revenue Code of 1954 (26 U.S.C.):

Sec. 6511 of the Internal Revenue Code of 1954 (26 U.S.C.) [as amended by Secs. 82(a), 82(b) and 82(c), Technical Amendments Act of 1958, P.L. 85–866, 72 Stat. 1606].

(a) *Period of Limitation on Filing Claim.*—Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.

(b) *Limitation on Allowance of Credits and Refunds.*—

(1) *Filing of claim within prescribed period.*—No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.

(2) *Limit on amount of credit or refund.*—

(A) *Limit where claim filed within 3-year period.*—If the claim was filed by the taxpayer during the 3-year period described in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return. If the tax was required to be paid by means of a stamp, the amount of the credit or refund shall not exceed the portion of the tax paid within the 3 years immediately preceding the filing of the claim.

(B) *Limit where claim not filed within 3-year period.*—If the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim.

\*     \*     \*     \*     \*     \*

The only issue contested at our bar is whether the complaint is susceptible of being read as a claim for recovery of payments made in escrow, or is only to be correctly interpreted as a claim for a refund of an overpayment of taxes for the years 1966 and 1971.

No doubt, the complaint repeatedly uses the terms "escrow payments" and "escrow

deposits" to describe payments to the Internal Revenue Service with reference to plaintiff's estimated income taxes for the years 1966 and 1971 made by plaintiff himself and by plaintiff's employer from withholdings from plaintiff's salary.

But the critical question is in what sense the complaint uses the terms "escrow payments" and "escrow deposits." It is not alleged, nor implied, nor suggested by plaintiff's counsel that plaintiff or his employer in making the payments to the IRS in any way indicated that the money was to be set aside by the IRS in a suspense account or otherwise until plaintiff's tax liability was determined, as in *Rosenman et al. v. United States,* 323 U.S. 658, 660, 65 S.Ct. 536, 89 L.Ed. 535 (1945). Nor does plaintiff allege that his or his employer's remittances were in any conventional sense payments in escrow, that is money "deposited with a third party to be held until the performance of a condition or the happening of a certain event." See Maris C. J. in *Gulf Petroleum S. A. v. Collazo,* 316 F.2d 257, 261 (1st Cir., 1963).

Manifestly, the complaint does not use the terms "escrow payments" and "escrow deposits" in a factual sense, but merely as the pleader's characterization of facts alleged elsewhere in the complaint. Hence we must examine the facts alleged by the complaint to see if there is any foundation for a claim to recover escrow deposits.

What the complaint, stripped of legal conclusions and pleader's characterizations, alleges is that plaintiff and his employer, without expressing any condition, so far as appears, remitted sums to the Internal Revenue Service on account of plaintiff's estimated 1966 and 1971 income taxes, that plaintiff was not liable for income taxes in either of those years, that the government had not assessed him for either of those years, and that when plaintiff filed with the IRS an administrative claim for refund of those payments the IRS disallowed the claim because "the return" was not "filed within three years after it was due."

The complaint alleges that plaintiff and his employer "deposited" moneys with the IRS. But the complaint obviously uses the word "deposited" in a Pickwickian sense. It is clear from both the text of the pleading and the argument of plaintiff's counsel that what plaintiff is saying is that he and his employer remitted money or checks to the IRS with an indication that they were to be used to pay plaintiff's estimated income taxes. There is nothing in the complaint nor in plaintiff's counsel's argument to us alleging that in making remittances plaintiff or his employer directly or indirectly communicated that they offered sums to the government other than as advance tax payments. Hence, as used in the complaint before us, "deposited" necessarily means "paid", and the complaint properly construed alleges that plaintiff and his employer made payments of taxes.

It is quite unnecessary to take evidence as to the nature of the payments because the pleading itself, particularly in paragraph 8, admits that the claim is a "claim for refund" of sums "composed of payment of estimated tax . . . and Withholding Taxes." °

Nor is there any merit to plaintiff's contention that the nature of the payments made by plaintiff or his employer is affected by the facts that subjectively plaintiff expected to receive a refund if nothing were due, and that it turned out that for the years 1966 and 1971 plaintiff had no income tax liability. § 6401(c) of the Internal Revenue Code of 1954 provides that "An amount paid as tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was made." This rather ambiguous language has been interpreted, as we believe correctly, to mean that "the absence of tax liability for the year in respect of which payment was made does not affect the status of the remittances as payments of tax." *Chemical Bank New York Trust Co. v. United States,* 275 F.Supp. 26, 30 (S.D.N.Y., 1967), aff'd per curiam 386 F.2d 995 (2nd Cir., 1967).

Hence, when plaintiff or his employer paid as estimated taxes more than was

rightly due, even though nothing was due, he was making an "overpayment of taxes", for which the sole remedy was that which Congress provided in § 6511 of the Internal Revenue Code of 1954. As was said by the Supreme Court in a cognate situation involving refund of taxes not due, "Whatever the reason, the payment of more [taxes] than is rightfully due is what characterizes an overpayment [of taxes]." *Jones v. Liberty Glass Co.,* 332 U.S. 524, 531, 68 S.Ct. 229, 233, 92 L.Ed. 142.

Plaintiff's claim being one for refund of taxes, it must be made within the time prescribed by § 6511 of the Internal Revenue Code. The complaint shows that the IRS rejected plaintiff's administrative claim for refund as untimely because "the return" was not "filed within three years after it was due." We do not rest upon that ground. Our conclusion is that the complaint is defective because it alleges that the tax payments which it seeks to recover were "paid" more than three years before plaintiff filed his administrative refund claim.

The complaint alleges plaintiff filed his administrative claim on August 8, 1975. Section 6511(b)(2)(A) of the Internal Revenue Code limits any recovery to ". . . the portion of the tax paid within the . . [three years] immediately preceding the filing of the claim." Since Binder filed his refund claim on August 8, 1975, he could not recover any taxes paid prior to August 8, 1972. The term "paid" as used in § 6511 is governed by the following provision of § 6513(b) of the Internal Revenue Code, 26 U.S.C.:

(b) *Prepaid Income Tax.*—For purposes of section 6511 or 6512—

(1) Any tax actually deducted and withheld at the source during any calendar year under chapter 24 [relating to collection of income taxes on wages at source] shall, in respect of the recipient of the income, be deemed to have been paid by him on the 15th day of the fourth month following the close of his taxable year with respect to which such tax is allowable as a credit under section 31.

(2) Any amount paid as estimated income tax for any taxable year shall be deemed to have been paid on the last day prescribed for filing the return under section 6012 for such taxable year (determined without regard to any extension of time for filing such return).

\* \* \* \* \* \*

Accordingly, the taxes to which the complaint refers were paid as of April 15, 1966 and April 15, 1972. They fall outside the recovery period specified in § 6511(b)(2)(A), and are barred.

Inasmuch as the claim stated in the complaint in the instant case is one for a refund of overpayments of taxes and cannot properly be construed as a statement of a claim to recover payments made in escrow, and inasmuch as plaintiff's claim is for the refund of taxes which were not paid within the period specified in § 6511(b)(2)(A) of the Internal Revenue Code of 1954, the complaint fails to state a cause of action.

The Judgment of the district court will be affirmed.

WEIS, Circuit Judge, dissenting.

The issue in this case is not complicated, although its ultimate resolution, dependent as it is upon slogging through the morass of the Internal Revenue Code, assuredly is. Plaintiff says he deposited $78,625.78 with the Internal Revenue Service to meet his obligations, if any, and to avoid penalties and interest in the event he owed income taxes for 1966 and 1971. Since it has now been determined that no taxes were due, plaintiff wants the deposit returned. The Service contended, and the district court agreed, that the "deposit" was actually a "payment of taxes," and because the statutory period for refund of an "overpayment" has expired, plaintiff cannot get his money back even though he is otherwise entitled to it.

Like so many other seemingly clear concepts, what amounts to a "payment" of taxes under the Internal Revenue Code has

become confused by refinements, corrections, revisions, and explanations. While a rose is a rose is a rose, *Rosenman v. United States*, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945), stands for the proposition that sending money to the I.R.S. is not necessarily a "payment," and whether a remittance constitutes a payment or a deposit in escrow must be decided in each case by a close examination of its facts.

The starting point for determining whether a remittance is a tax payment is an analysis of *Rosenman v. United States, supra*. There, the Court held that sending funds to the I.R.S. under protest as protection from assessment of penalties and interest was merely a "deposit" and not a "payment" of taxes that commenced the running of the statute of limitations. Upon receipt of the money, the Commissioner placed the funds in a "suspense" account. Commenting upon these facts, the Court said:

> "The receipt by the Government of moneys under such an arrangement carries no more significance than would the giving of a surety bond. Money in these accounts is held not as taxes duly collected are held but as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due." *Id.* at 662, 65 S.Ct. at 538.

In *Rosenman's* view, a concrete event, such as a prior assessment of liability by the I.R.S., would be necessary to transform a mere deposit of funds into a payment of taxes.

One authoritative commentary in the field with due deference to *Rosenman* has summarized the factors to be considered in determining whether there has been a payment:

> "This much is clear: (1) a remittance is not per se 'payment' of the tax; (2) a remittance that does not satisfy an asserted tax liability should not be treated as the 'payment' of a tax; and (3) an essential factor in 'payment' before assessment is the satisfaction or discharge of what the taxpayer deems a liability." 10 J. Mertens, Law of Federal Income Taxation § 58.27 (rev. ed. 1976) (footnote omitted). *See also* 5 J. Rabkin & M. Johnson, Federal Income Gift and Estate Taxation § 76.03(3) (1978).

*Rosenman* was an estate tax case, but we have held that the same reasoning applies to funds transmitted in connection with possible income tax liability, *Budd Co. v. United States*, 252 F.2d 456, 459–60 (3d Cir. 1957), and it is not necessary that the money be deposited in a suspense account. *Hill v. United States*, 263 F.2d 885, 886 n. 3 (3d Cir. 1959). *See also Rose v. United States*, 256 F.2d 223, 226–27 (3d Cir. 1958), and *Fortugno v. Commissioner*, 353 F.2d 429, 433–35 (3d Cir. 1965), *cert. dismissed*, 385 U.S. 954, 87 S.Ct. 337, 17 L.Ed.2d 302 (1966).[1]

It is clear, therefore, that the taxpayer is not foreclosed from recovering his money simply because the statute of limitations applicable to a claim for refund of an overpayment has expired. Thus, it is important that the facts be analyzed, and since this is a dismissal under Fed.R.Civ.P. 12(b)(6), I take them from the complaint and view them in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232,

---

1. The majority does not dispute these general principles. However, it does place some reliance upon *Chemical Bank of New York Trust Co. v. United States*, 275 F.Supp. 26, 30 (S.D.N.Y.), *aff'd per curiam*, 386 F.2d 995 (2d Cir. 1967), in holding that § 6401(c) of the 1954 Internal Revenue Code is applicable. I do not believe that § 6401(c) is relevant to the statute of limitations claim asserted here. The predecessor section to § 6401 was enacted by Congress in 1943 to resolve the problem of when interest is owed by the United States if an admitted overpayment occurs. See the discussion and extract from the Committee Reports in *Fortugno v. Commissioner, supra* at 433 n. 7. We have held that this provision is not controlling in a statute of limitations context, *Budd Co. v. United States, supra* at 460. To the same effect, *see* 10 J. Mertens, *supra* at § 58.27. *But cf. United States v. Miller*, 315 F.2d 354, 357–58 (10th Cir.), *cert. denied*, 375 U.S. 824, 84 S.Ct. 64, 11 L.Ed.2d 57 (1963). Therefore, I cannot accept the majority's statement that "the absence of tax liability for the year in respect of which payment was made does not affect the status of the remittances as payments of tax" in the context of this case.

236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). It is particularly in analyzing the facts that I part company with the majority.

The pleading is far from artful. It is inconsistent at times, and as the majority points out, alternately characterizes the remittances as "escrow payments" or a "deposit," and as "payment of estimated taxes." Nevertheless, in paragraph 5(b) the complaint reads: "escrow deposits were solely for the purpose of avoiding penalties and interest . . . ." Furthermore, in paragraph 7(a), plaintiff alleges:

> "that the defendant and the Internal Revenue Service is [*sic*] in error in finding the escrow deposits of money to be overpayments and tax payments. To the contrary they are not tax payments or overpayments as no taxes were ever due thereon, nor were any assessments made for the periods involved."

While these allegations are conclusory to a great extent, there can be no question that the plaintiff is pressing his cause under the *Rosenman* theory.

It would have been helpful in resolving the issues here if plaintiff had recited some of the facts underlying his statements that the remittances were "escrow deposits." However, Fed.R.Civ.P. 8 requires that a complaint need only consist of "a short and plain statement of the claim showing that the pleader is entitled to relief." The objective of the rule is "to avoid technicalities and to require that the pleading discharge the function of giving the opposing party fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved; the discovery process bears the burden of filling in the details." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1215 (1969) (footnotes omitted). The complaint in this case meets that test as evidenced by the fact that neither the majority nor I have had the slightest difficulty in recognizing the issues tendered by the plaintiff. Indeed, the Commissioner's brief betrayed no uncertainty as to the plaintiff's position.

One final point deserves comment. In its order dismissing the case, the district court failed to rule upon the plaintiff's request to amend, which was included in his answer to the government's motion. Though I find the complaint adequate to withstand a 12(b)(6) motion, the district court should have granted the plaintiff leave to amend. *Cf. Borelli v. City of Richmond,* 532 F.2d 950, 951 (3d Cir. 1976) (per curiam). It may well be that an amendment could have alleged facts to bring the case more clearly within the ambit of *Rosenman* and *Budd.* I am left with the uncomfortable feeling that this case has been decided both here and in the district court on a lack of pleading skill rather than on the merits. The harried taxpayer seeking redress from the government has enough obstacles in his path without being subjected to an unduly narrow construction of pleading requirements. I dissent.