In re Roger PRANSKY, Debtor.

Roger Pransky, Plaintiff,

v.

Internal Revenue Service, Defendant.

Bankruptcy No. 97–20528.

United States Bankruptcy Court,
D. New Jersey.

Nov. 3, 1999.

Michael I. Saltzman, White & Case LLP, New York City, for debtor.

Morris S. Bauer, Ravin, Greenberg & Marks, P.A., Roseland, NJ, for debtor.

Samuel A. Mitchell, U.S. Department of Justice, Tax Division, Washington, D.C., for IRS.

## OPINION

WILLIAM H. GINDIN, Bankruptcy Judge.

### PROCEDURAL HISTORY

This dispute arises out of a proof of claim filed by the Internal Revenue Service ("IRS") against Roger Pransky for the unpaid portion of an asserted tax liability. Both debtor and the IRS have submitted motions for summary judgment. The issue before this court is whether or not debtor's remittances constitute payments or deposits for purposes of 26 U.S.C. § 6511.

This court conducted a hearing on this matter on July 2, 1999, and reserved decision. Counsel for both parties submitted supplemental memoranda.

This court finds, for the reasons set forth below, that 26 U.S.C. § 6511 does not operate as a bar to this court's jurisdiction to determine the amount of the IRS's claim as the debtor's remittances did not constitute payments of tax which triggered § 6511's three-year time limit.

This court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151 and 157(a). It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) & (O) and 11 U.S.C. § 505(a)(1). To the extent that this determination constitutes a "non-core" determination, this opinion shall constitute a report and recommendation pursuant to 28 U.S.C. § 157(c)(1).

### FACTS

Roger Pransky ("Pransky" or "debtor") filed a chapter 11 petition on January 15, 1997. On December 11, 1991, Pransky filed federal tax returns for the years 1984, 1985, and 1986. On July 20, 1992, Pransky filed his federal tax return for 1987. Pransky failed to timely file returns because he was under criminal investigation at the time such returns were due.

In light of the criminal investigation, debtor's defense counsel (with assistance from a tax attorney) advised him not to file tax returns until the conclusion of the investigation. Debtor's counsel was concerned with possible Fifth Amendment complications. The defense counsel also instructed debtor to send money to the IRS in order to satisfy future tax liability and to prevent the assessment of penalties and interest. Debtor's defense counsel, therefore, remitted several checks to the IRS on behalf of debtor. Each remittance was accompanied by a letter which stated that the monies were "to be applied to the account of the captioned taxpayers for any income tax liability that they may have for the year."

IRS records for 1984 indicate Pransky's total overpayment for the 1984 tax year was $27,437.97. This amount includes the penalties and interest imposed against him. On April 12, 1985, Pransky filed a timely Form 4868 extension request with an estimated payment of $9,500 for the 1984 tax year, extending his filing deadline to August 15, 1985. On April 17, 1986[1], Pransky sent the IRS a $40,000 remittance for the 1984 tax year. Pransky's wage withholdings for 1984 were $4,000. Pransky claimed a $31,697 overpayment on his 1984 tax return[2]. The IRS, on April 14, 1986, issued a notice to Pransky request-

---

1. On February 13, 1986, debtor sent a check to the IRS in the amount of $40,000 for the 1984 tax year. A stop order was put on this check. A second check in the amount of $40,000 was remitted to the IRS for the 1984 tax year on April 17, 1986.

2. Pransky sent a payment of $9500 seeking a Form 4868 extension for 1984. Pransky does not dispute that this remittance constitutes a payment. Pransky is not seeking a refund of the amounts remitted with Form 4868 extensions forms because they fall outside the statute of limitations.

ing information about his 1984 Form 1040. On May 26,1986, the IRS sent Pransky a notice informing him that his 1984 Form 1040 was overdue. The IRS also issued an overdue notice to debtor on September 22, 1986.

IRS transcripts indicate that Pransky's remittances exceeded his 1985 tax liability (including penalties and interest assessed) by $33,389.94. On April 15,1986, Pransky submitted a payment of $20,000 accompanied by a Form 4868 extension request[3], extending the filing deadline to October 15, 1986. On July 8, 1987, the IRS received a remittance of $150,000 from Pransky for his 1985 tax liability. Pransky's employer withheld $35,000 from his wages. Pransky claimed an overpayment of $48,737 on his 1985 tax return.

On July 8, 1987, the IRS received a $315,000 remittance from Pransky for the 1986 tax year. Debtor's wage withholdings for 1986 were in the amount of $50,-000. On April 21, 1998, Pransky remitted $9,500 to the IRS for the 1987 tax year. Pransky's reported wage withholdings for 1987 totaled $1,564.

Pransky's tax returns indicate that the remittances were in excess of the actual taxes due for the years 1984 and 1985. Pransky claimed the overpayments as credits on his 1985, 1986 and 1987 tax returns and sought to apply them against the taxes due for 1986 and 1987. The IRS treated the credits as refund requests. The IRS, therefore, disallowed the refund requests on February 20, 1992, and March 9, 1992, asserting that they were time barred pursuant to 26 U.S.C. § 6511(a). As a result, Pransky underpaid the taxes owed for 1986 and 1987. On May 7, 1992, debtor filed Form 843 in order to administratively appeal the refund denial.

The IRS's Certificate of Assessments and Payments shows that Pransky is current on his tax liabilities owed for the years 1984 through 1986. The 1987 account, however, has an outstanding bal-ance of $144,874.74. On February 27, 1997, the IRS filed a timely proof of claim in the amount of $131,237.02. The balance of the secured claim was $131,237.02 as of January 15, 1997, reflecting a balance of $2,183.28 in taxes, $34,650.15 in penalties, and $94,403.59 in interest.

Pransky asserts that he is entitled to recover funds remitted to the IRS because the remittances constituted mere deposits to stop the assessment of interest and penalties until he could formally file his tax returns for the years 1984 through 1987. Pransky further asserts that the statute of limitations set forth in 26 U.S.C. § 6511(a) was not triggered until he filed his tax returns in 1991 and 1992.

In contrast, the IRS asserts that debtor's failure to timely apply for a refund pursuant to section 6511(a) operates as a bar to the bankruptcy court's jurisdiction to determine the amount and validity of the IRS's proof of claim.

## DISCUSSION

### Standard of Review

Summary judgment is justified if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992).

The initial burden of demonstrating the absence of genuine issues of material fact falls on the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106

---

**3.** Pransky does not seek a refund of this Form 4868 remittance.

S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, the burden shifts to the non-movant. The non-movant "cannot merely rely upon conclusory allegations in his pleadings or in memoranda and briefs to establish a genuine issue of material fact." Indeed, he "must make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by the depositions and admissions on file." *Harter v. GAF Corp.,* 967 F.2d 846, 852 (3d Cir.1992). On cross-motions for summary judgment, the court must determine separately each party's motion whether or not judgment may be entered in accordance with the summary judgment standard. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720, at 23–25 (2d ed.1983). Both parties agree as to all material facts in this case.

### *STATUTORY REQUIREMENTS*

Code section 505 grants the bankruptcy court broad authority to determine tax liabilities of a debtor. That section provides:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before or adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; or

(B) any right of the estate to a tax refund, before the earlier of—(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or (ii) a determination by such governmental unit of such request.

Sections 505(a)(2)(B)(1) and 505(a)(2)(B)(1) of the Bankruptcy Code both require that a debtor "properly" seek a "refund" from the IRS before the bankruptcy court can assert jurisdiction. The proper procedure is to file a claim for refund. 26 U.S.C. §§ 6511(b)(1) and 7422(a). *See In re Dunhill Medical, Inc.,* 1996 WL 354696 at *5 (Bankr.D.N.J. March 27, 1996). Section 505 incorporates the statute of limitations set forth in § 6511(a).

Section 6511(a) provides that a refund claim must be submitted "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such period expires the later." 26 U.S.C. § 6511(a). Section 6511(a) states as follows:

Claims for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid . . .

Section 6511(b)(2)(A) provides in part:

If the claim was filed by the taxpayer during the 3–year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return.

### Deposit v. Payment

The starting point for assessing whether or not a remittance constitutes a tax payment or merely a deposit is an examination of *Rosenman v. United States,* 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945). Although *Rosenman* is an estate tax case,

the same reasoning has been employed regarding monies remitted in connection with potential income tax liability. *See Budd Co. v. United States,* 252 F.2d 456, 459–60 (3d Cir.1957). Although the *Rosenman* court noted that "[c]laims for tax refunds must conform strictly to the requirements of Congress," the Court opined that not every remittance to the IRS constitutes a payment for purposes of section 6511(a). *Rosenman,* 323 U.S. at 661, 65 S.Ct. 536.

In *Rosenman,* the executors of the estate remitted money to the IRS noting "[t]his payment is made under protest and duress, and solely for the purpose of avoiding penalties and interest, since it is contended by the executors that not all of this sum is legally or lawfully due." *Id.* at 660, 65 S.Ct. 536. The estate filed a claim for refund six years after the remittance. The IRS denied the refund claim on the ground that it was untimely. The question for the *Rosenman* court was whether or not such remittance comprised a defined tax payment. If the court deemed the remittance a "payment," the claim would be denied because the refund request fell outside the three-year limitations period.

The Supreme Court, however, ruled that the remittance was only a deposit. The Court was satisfied that the executors were not committing to any defined tax liability; rather, they were protecting the estate from assessment of penalties and interest. Indeed, the Supreme Court stated: "[t]he taxpayer did not discharge what he deemed a liability nor pay one that was asserted. There was merely an interim arrangement to cover whatever contingencies the future might define." *Rosenman,* 323 U.S. at 662, 65 S.Ct. 536.

The Supreme Court determined that the three (3) year statute of limitations did not begin to run until the IRS assessed the actual tax due. Since the IRS's assessment had been made less than three years before the estate filed the refund claim, the executors were within the statute of limitations set forth in § 6511(a).

## Application of Rosenman

The lower courts have differed in their application of *Rosenman.* One line of decisions has adopted the view that *Rosenman* stands for the proposition that there can be no tax payment prior to an assessment of liability. This is commonly referred to as the *per se* rule. *See Thomas v. Mercantile Nat. Bank,* 204 F.2d 943 (5th Cir. 1953) (In this case the Fifth Circuit created a *per se* rule which states that there can be no tax liability prior to assessment). These courts conclude that some further act is necessary beyond the mere remittance of money, such as (1) formal assessment by the IRS, or (2) the taxpayer submitting a tax return or signing a form admitting liability. *See United States v. Dubuque Packing Co.,* 233 F.2d 453, 459–60 (8th Cir.1956) ("[W]here a taxpayer makes a transfer of money to the collector, the transfer itself does not define the tax obligation. Some further act is necessary."); *Plankinton v. United States,* 267 F.2d 278, 280 (7th Cir.1959) (generally remittances prior to the time liability is defined are not payments).

The courts that advocate the *per se* rule find inconsequential the fact that the *Rosenman* estate sent in the remittance under protest. Those courts note that "if [Justice Frankfurter] had meant to draw a distinction between those who remit money under protest, taking care to specify they do not really believe they owe it all, and those who fail to say so out loud, he would have found the words to say so more clearly." *Ewing v. United States,* 711 F.Supp. 265, 270 (W.D.N.C.1989).

A number of courts have disagreed with the *per se* rule, reasoning that *Rosenman* does not bar treating monies remitted prior to an assessment as a payment of tax. *Fortugno v. Comm'r Internal Revenue,* 353 F.2d 429, 435 (3d Cir.1965) ("Rosenman does not foreclose treating as a tax payment a remittance made prior to an assessment," and "we believe ... the weight of authority [to be] that there must

either be an assessment or an acquiescence in the proposed deficiency ..."). These courts, however, agree that a payment is something more that the mere remittance of money to the IRS.

Those courts rejecting the *per se* rule generally consider the following payment indicia: "(1) when the tax liability is defined; (2) the taxpayer's intent in remitting the money; and (3) how the IRS treats the remittances upon receipt." *Wiltgen v. United States,* 813 F.Supp. 1387, 1393 (N.D.Iowa 1992). *See also Ertman v. United States,* 165 F.3d 204, 207 (2d Cir.1999) (Courts look to the facts and circumstances of each case in order to determine whether or not a remittance is a deposit or a payment).

A third line of cases holds that in the Bankruptcy context the filing of a timely refund claim is unnecessary if certain conditions are met. For example, in *In re Dunhill Medical, Inc.,* 1996 WL 354696 (Bankr.D.N.J. March 27, 1996), the bankruptcy court held that although filing of a refund claim is not necessarily a jurisdictional prerequisite under § 505, debtors still must abide by filing requirement set forth in § 6511(a). Relying on the legislative history of section 505, the court opined that a debtor need not file a refund claim where the refund is sought as an offset or counterclaim to a proof of claim filed by the IRS. The court, however, concluded that "[r]egardless of whether a claim for refund has been properly asserted for purposes of section 505(a)(2)(B), the bankruptcy court must still apply the statute of limitations established by § 6511, to each tax year at issue in this case because the timeliness of a refund claim is jurisdictional." *Id.* at *6, *citing Kreiger v. United States,* 539 F.2d 317 (3d Cir.1976). Thus, the bankruptcy court only entertained the refund claim that fell within section 6511(a)'s statute of limitations. *Id.* at *7.

*In re Dunhill Medical, Inc., supra,* however, was called into question by *United States of America v. Kearns,* 177 F.3d 706 (8th Cir.1999). Although the *Kearns* court noted that the statute of limitations is a jurisdictional requirement in suits against the United States, the court still concluded that "when the claims of the IRS and a debtor involve the same tax liabilities, it is 'without purpose and irrational' to deny jurisdiction over funds absent a formal request by the debtor." *Kearns,* 177 F.3d at 711, *citing Michaud v. United States,* 206 B.R. 1, 5 (D.N.H.1997). Thus, the Eighth Circuit held that debtors do not have to file administrative refund claims nor comply with the statute of limitations prescribed by § 6511(a) if the funds are sought as an offset or counterclaim to a request for payment by the IRS.

The *Kearns* court adopted the *Michaud* court's reasoning that:

> [t]he rule that the taxpayer must first request a refund from the IRS before the bankruptcy court has jurisdiction to order a refund is aimed at efficiency and preservation of resources. A refund request affords the IRS an opportunity to consider the merits of a taxpayer's claim of refund before the government's litigation resources and judicial resources are expended on the matter. However, when the IRS files a proof of claim against a taxpayer for a given tax year's liability, it would be futile for the taxpayer to request a refund of monies paid pursuant to that very same year's liability. Once the IRS has committed itself to expending resources resolving the taxpayer's liability for the year in question, no additional burden is levied by arming the bankruptcy court with jurisdiction to order a refund should those liability issues be resolved in favor of the tax payer. *Michaud,* 206 B.R. at 5.

 This court adopts the position that there must either be an assessment or an acquiescence in the proposed deficiency before a remittance can be deemed a payment for purposes of § 6511. *Fortugno v. Commissioner of Internal Revenue,* 353 F.2d 429, 435 (3d Cir.1965). *See In the Matter of Qual Krom South, Inc.,* 119 B.R. 327, 329 (Bankr.S.D.Fla.1990) ("Since the

period for filing a refund is jurisdictional, section 505 does not serve to revive a period of limitation if it has otherwise expired prior to the filing of the petition"). This court, therefore, holds that the remittances at issue constituted deposits. Several factors influence this conclusion.

First, this court is unpersuaded by the fact that the IRS treated the remittances as advance payments of tax liability, rather than setting the remittances aside in a suspense account. *See Hill v. United States*, 263 F.2d 885 (3d Cir.1959), *Id.* at 886 n. 3 (noting that it is not necessary for a remittance to be placed in a suspense account in order to constitute a deposit). Second, this court rejects the IRS's contention that a deposit results only when the IRS and the taxpayer have an express or implied agreement to treat a remittance as a deposit. Based upon a review of the relevant case law, this court concludes that "consent" is not a prerequisite for a remittance constituting a deposit.

Third, this court is satisfied that debtor, relying on the advice of defense counsel, remitted the funds in order to avoid assessment of interest and penalties, not merely to preserve his Fifth Amendment rights. Indeed, the documentation accompanying the remittances did not commit the debtor to any defined tax liability; rather, it was intended to be sufficient to stop the assessment of interest and penalties.

Fourth, the IRS's reliance on *Binder v. United States*, 590 F.2d 68 (3d Cir.1978), is misplaced. In *Binder*, the Third Circuit dismissed the taxpayers' complaint because it did not expressly allege that the taxpayers submitted tax liability deposits to the IRS. *Id.* at 69. *Binder* is distinguishable from the instant case because, unlike the taxpayer in *Binder*, when Pransky sent money to the IRS, he expressed his intent for the IRS to treat his remittances as deposits. Specifically, each remittance was accompanied by a letter which stated that the monies were "to be applied to the account of the captioned taxpayers for any income tax liability that they may have for the year."

Debtor filed his 1984, 1985 and 1986 tax returns on December 11, 1991. On July 20, 1992, Pransky filed his 1987 federal tax return. This court deems December 11, 1991, the date on which debtor's tax liability became defined. Debtor, therefore, had three years from this date to seek a refund of the overpayments. Since debtor claimed the 1984 and 1985 tax overpayments as credits on his 1985, 1986 and 1987 tax returns, the refund requests fell within the three-year period. *In re Dunhill Medical, Inc.*, 1996 WL 354696 at *5 (Bankr.D.N.J. March 27, 1996) (noting that "a request for a 'credit' is indistinguishable from a request for a 'refund' "). Additionally, on May 7, 1992, debtor administratively appealed the IRS's refund disallowance by filing Form 843 (Claim for Refund and Requests for Abatement) for 1984, 1985 and 1986 tax years. This administrative refund claim also fell within the time limit set forth in section 6511(a).

Thus, debtor's refund claims are not time-barred by the applicable statute of limitations set forth in § 6511. The remittances constituted deposits to prevent the assessment of penalties and interest. As such, the three year time-bar did not begin to run until 1991 when debtor asserted and acquiesced to his tax liability.

**Penalties and Interest Assessed**

The IRS may impose delinquency penalties upon taxpayers pursuant to 26 U.S.C. § 6651(a)(2). There is a presumption in favor of the IRS that penalties and interest assessed against delinquent taxpayers are correct. *See Welch v. Helvering*, 290 U.S. 111, 114, 54 S.Ct. 8, 78 L.Ed. 212 (1933). This presumption, however, may be overcome if the taxpayer shows that the filing delay was a result of reasonable cause and not due to willful neglect. 26 U.S.C. § 6651(a); *See also United States v. Boyle*, 469 U.S. 241, 245, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985). The filing of a tax return is mandatory. The

Fifth Amendment does not excuse an individual from this obligation. *United States v. Sullivan,* 274 U.S. 259, 263, 47 S.Ct. 607, 71 L.Ed. 1037 (1927).

In *Cooper v. United States,* 834 F.Supp. 669 (D.N.J.1993), the taxpayers, relying on the advice of counsel, failed to file several tax returns. The taxpayer was the subject of a criminal investigation by the IRS. The IRS audited the taxpayers' returns for the years 1979–1981. The taxpayers were advised by counsel not to file any additional tax returns until the auditing process was concluded. The district court held that debtor's reliance on counsel's advice to make a blanket Fifth Amendment assertion did not constitute reasonable cause. Indeed, the court held that: "[t]he record indicates that plaintiffs made no efforts to secure an extension from the IRS, but merely accepted unquestionably the facially extraordinary advice that they need not file any tax documents whatsoever for an indefinite period of time." *Id.* at 673.

In the instant case, debtor asserts that its failure to file timely tax returns was the result of reasonable cause and not of willful neglect, entitling it to a refund of the penalties and interest assessed by the IRS. This court disagrees. Pransky did not merely assert the Fifth Amendment privilege and do nothing; rather, he submitted large amounts to the IRS to cover future liabilities. Had the debtor submitted timely deposits to the IRS, this court would abate the assessed penalties and interest. The debtor, however, submitted the deposits after the filing deadlines for the years in question. Reasonable cause under § 6651 requires debtor to demonstrate that he "exercised ordinary business care and prudence," but nevertheless was "unable to file a return within the prescribed time." *Boyle,* 469 U.S. at 245–246, 105 S.Ct. 687.

### CONCLUSION

For the reasons set forth above, this court holds that debtor submitted viable refund claims under section 6511(a).

Debtor, however, is not entitled to an abatement of the penalties and interest assessed.

Counsel for debtor shall submit an appropriate order within ten (10) days.