Michaud v. USA                    CV-96-323-SD  03/06/97  P

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Gloria Michaud


    v.                                    Civil No. 96-323-SD


United States of America


**O R D E R**


The United States appeals from a final judgment entered by the United States Bankruptcy Court for the District of New Hampshire in favor of the debtor and against the United States. The present dispute arises out of a proof of claim filed by the Internal Revenue Service (IRS) against plaintiff Gloria Michaud for the unpaid portion of an asserted tax liability.


Facts

The federal tax returns that are the subject of this dispute were filed for the years 1980 and 1981.  The returns, jointly filed in the names of Gloria Michaud and her then husband Hubert Michaud, purportedly carried the signatures of both.  However, Mrs. Michaud testified that she neither signed nor even reviewed either return.  The IRS accepted the returns for those two years

as the joint returns of Gloria and Hubert Michaud.

The Michauds' returns asserted charitable contribution deductions based on an alleged gift of real property to the Life Science Church. Such deductions were examined and disallowed by the IRS on the ground that the Life Science Church did not qualify as a charitable organization. The IRS assessed Mr. and Mrs. Michaud for the additional tax due on their joint returns.

Mr. Michaud was convicted of criminal tax evasion as a result of the fraudulent charitable deduction. The IRS then filed a proof of claim against Gloria Michaud (hereinafter "Michaud") in the amount of $491,383.17, which includes approximately $104,000 for taxes owed and $387,000 for interest and penalties. In response, she filed adversary proceedings in the Bankruptcy Court for the District of New Hampshire.

The bankruptcy court held that Michaud was not liable for the taxes attributable to the erroneous charitable deductions included in the Michauds' tax returns. The court held that Michaud was entitled to "innocent spouse" relief from otherwise applicable joint and several liability for understatements in jointly filed tax returns. The bankruptcy court ordered that the claimed tax liability be set to zero, and further ordered the IRS to refund to Michaud the money she already paid to the IRS pursuant to the asserted liability.

## Discussion

The United States contends that the bankruptcy court lacked jurisdiction to order a tax refund in favor of Michaud because she had not previously filed a request for refund from the IRS. Title 11 U.S.C. § 505(a)(1) grants jurisdiction to the bankruptcy court as follows:

> Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

Excepted from this grant of jurisdiction is the authority to determine

> any right of the estate to a tax refund, before the earlier of--
> (i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or
> (ii) a determination by such governmental unit of such request.

11 U.S.C. § 505(a)(2)(B).

It is undisputed that Michaud did not request a refund from the IRS prior to adjudication by the bankruptcy court; therefore, she has not exhausted her administrative remedies as required by section 505(a)(2)(B).

Nonetheless, this court holds that the bankruptcy court was acting within its jurisdiction under section 505 of the

3

Bankruptcy Code when it ordered a refund in favor of Michaud, even though Michaud had failed to exhaust her administrative remedies. The court in In re Dunhill Medical, Inc., 1996 WL 354696, at *5 (Bankr. D.N.J. March 27, 1996), found an exception to the exhaustion requirement "where refunds are sought as an offset or counterclaim to a claim or request for payment by the IRS, or other tax authority, [and stated that] no refund claim need first be made with the tax authority." Here, the government filed a proof of claim against Michaud in the bankruptcy court for tax liabilities allegedly accrued in 1980 and 1981. Michaud responded by asserting the "innocent spouse" shield to that liability and prayed the bankruptcy court to set the asserted liability to zero and order a refund of monies she had already paid pursuant to that liability. Under In re Dunhill's exception to the exhaustion requirement, the bankruptcy court had jurisdiction to award both the prospective relief of setting the asserted liability to zero and the retrospective relief of refund.

The government responds that In re Dunhill was wrongly decided. The court in In re Dunhill found support for an exception to section 505(a)(2)(B)'s exhaustion requirement in the legislative history. The government argues that this legislative history is inconsistent with the statutory language, which on its

4

face appears to mandate a request for refund in every case and does not permit exceptions. According to the government, the statute's plain meaning must control interpretation to the exclusion of inconsistent legislative history. As support, the government relies on <u>Hubbard v. United States</u>, ___ U.S. ___, ___, 115 S. Ct. 1754, 1761 (1995), indicating "[c]ourts should not rely on inconclusive statutory history as a basis for refusing to give effect to the plain language of an Act of Congress."

However, the plain meaning rule is "rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists." <u>Boston Sand & Gravel Co. v. United States</u>, 278 U.S. 41, 48 (1928). As the Court stated in <u>Church of the Holy Trinity v. United States</u>, 143 U.S. 457, 459 (1892):

> It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. . . . This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act.

Where the literal reading of a statutory term would "compel an odd result," <u>Green v. Bock Laundry Machine Co.</u>, 490 U.S. 504, 509

5

(1989), courts must search for other evidence of congressional intent to lend the statutory terms their proper scope. The results of applying the plain meaning rule need not rise to an absurdity before the strictures of the plain meaning rule are relaxed. Public Citizen v. United States Department of Justice, 491 U.S. 440, 454 n.9 (1989) ("this Court has never adopted so strict a standard [as the absurdity test] for reviewing committee reports, floor debates, and other non-statutory indications of congressional intent, *and we explicitly reject that standard today*"). Rather, "[l]ooking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is *difficult to fathom* or where it seems inconsistent with Congress' intention." Id. at 455 (emphasis added).

It would be an "odd result" if section 505(a)(2)(B)'s exhaustion requirement were bereft of an exception for cases such as this, where the refund requested by the taxpayer and the proof of claim filed by the IRS pertain to the same year's tax liability. The rule that the taxpayer must first request a refund from the IRS before the bankruptcy court has jurisdiction to order a refund is aimed at efficiency and preservation of resources. A refund request affords the IRS an opportunity to consider the merits of a taxpayer's claim of refund before the government's litigation resources and judicial resources are

expended on the matter. See McNeil v. United States, 508 U.S. 106 (1993) ("Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process. Every premature filing of an action under the [Federal Tort Claims Act] imposes some burden on the judicial system and on the Department of Justice which must assume defense of such actions.") However, when the IRS files a proof of claim against a taxpayer for a given tax year's liability, it would be futile for the taxpayer to request a refund of monies paid pursuant to that very same year's tax liability. The filing of the proof of claim implies the belief of the IRS that the taxpayer has underpaid taxes for that given year, and the IRS is unlikely to radically change positions by honoring the taxpayer's request for refund. Once the IRS files a proof of claim, the United States has committed itself to expending resources resolving the taxpayer's liability for the year in question, and no additional burden is levied by arming the bankruptcy court with jurisdiction to order a refund should those liability issues be resolved in favor of the taxpayer.

When an IRS proof of claim and a taxpayer's request for refund regard the same tax liabilities, it would be without purpose and irrational to deny the bankruptcy court jurisdiction to order a refund until the taxpayer makes a formal request for a

refund from the IRS.  For this reason, this court rejects a strict construction of section 505(a)(2)(B)'s language, which permits no exceptions to the exhaustion requirement.  Instead, this court interprets the statute in light of the statement in the legislative history indicating an exception when "the refund results from an offset or counterclaim to a claim or request for payment by the Internal Revenue Service."  COLLIER ON BANKRUPTCY § 505.LH[2][a].

The exception is clearly applicable on these facts, and thus the bankruptcy court had jurisdiction to order a refund in favor of Michaud, despite the failure of a prior refund request to the IRS.

The United State urges this court to reverse the bankruptcy court's holding that Michaud was entitled to "innocent spouse" relief from tax liability for the deficiencies on the 1980 and 1981 tax returns jointly filed with her husband.  Spouses who file joint returns generally are jointly and severally liable for the full amount of tax on their combined income, and any deficiencies on the joint return are chargeable to either spouse. 26 U.S.C. § 6013(d)(3).  However, section 6013(e)(1) provides an exception to joint and several liability for an "innocent spouse" who was unaware that the other spouse either intentionally or negligently created an understatement on their joint tax returns.

8

The bankruptcy court held that Michaud was an "innocent spouse," relieved of joint and several tax liability for the understatements intentionally caused by her husband.

According to the United States, the bankruptcy court erred as a matter of law in extending "innocent spouse" relief to Michaud. One seeking to qualify for "innocent spouse" status must prove, among other things, that "in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement." 26 U.S.C. § 6013(e)(1). It is well settled that an "innocent spouse" must discharge a duty of inquiry, and failure of this duty precludes the requisite finding that the spouse had no reason to know of the understatement. The innocent spouse exception "is designed to protect the innocent, not the intentionally ignorant." Erdahl v. Commissioner of Internal Revenue, 930 F.2d 585, 589 (8th Cir. 1991). The bankruptcy court found adequate proof that Michaud was "innocent" and had no reason to know of the understatements, even though she neither read nor reviewed the 1980 and 1981 joint returns. The United States objects to this finding on the ground that the broader umbrella duty of inquiry should at least include the more specific duty to review the returns. According to the government, a spouse who fails to review a jointly filed return has not met her duty of inquiry and is precluded, as a matter of

9

law, from claiming status as an "innocent spouse." Since Michaud neither reviewed her joint returns nor made any effort to do so, the United States urges that the bankruptcy court erred as a matter of law in conferring "innocent spouse" status on Michaud.

However, whether a spouse has satisfied a duty of inquiry or instead has remained "intentionally ignorant" is a fact-specific analysis. The scope of the duty of inquiry and the boundaries between the "innocent" and the "intentionally ignorant" depend on the circumstances of each case. The standard is whether "a reasonably prudent taxpayer in his or her position could be expected to know that the stated tax liability was erroneous or that further investigation was warranted." House v. Commissioner of Internal Revenue, 1995 WL 92278, at *80 (U.S. Tax Ct. Mar. 6, 1995) (citing Kistner v. Commissioner, 18 F.3d 1521, 1525 (11th Cir. 1994)). While this appears an objective standard, courts typically consider subjective factors in determining what is reasonable in each case. For instance, courts consider: "(1) the putative innocent spouse's level of education, (2) his or her involvement in the family's business and financial affairs, (3) the putative guilty spouse's evasiveness and deceit about the family's finances, and (4) the presence of lavish or unusual expenditures or any large unexplained increase in the family's standard of living." Silverman v. Commissioner of Internal

10

<u>Revenue</u>, 1996 WL 70304, at *11 (U.S. Tax Ct. Feb. 20, 1996); <u>Price v. Commissioner of Internal Revenue</u>, 887 F.2d 959, 965 (9th Cir. 1989).  Under the case law, the duty of inquiry is predominantly a subjective, factual standard rather than an inflexible objective rule.

Likewise, the United States Tax Court has employed a subjective standard to resolve whether a spouse's failure to review a return was reasonable under the circumstances. <u>Silverman</u>, <u>supra</u>, 1996 WL 70304 at *12.  The court recognized that "ordinarily, we would conclude that [the guilty spouse's] failure to present the [tax returns] to [the innocent spouse] for signing should . . . have alerted [the innocent spouse] that something was wrong."  <u>Id.</u>  However, the court went on to hold that the taxpayer had explained the failure to review the return by offering evidence that dispelled the notion that she chose to remain willfully blind.  The court held that, on those facts, she met her duty of reasonable inquiry, even though she never reviewed the return.

The United States' contention that a spouse who does not review tax returns can never qualify for "innocent spouse" status has some support in the case law.  <u>Hayman v. Commissioner of Internal Revenue</u>, 992 F.2d 1256, 1262 (2d Cir. 1993) ("Although Hayman claims to have signed the returns without reading them,

11

she nevertheless is charged with constructive knowledge of their contents."); House, supra, 1995 WL 92278, at *81 ("Mrs. House had a duty to review her completed income tax returns, and she is not relieved of that obligation because of her reliance on others to complete the return properly.").  However, such a rule does not fit smoothly with the prevailing subjective approach to defining the duty of inquiry, because it does not permit a consideration of the relevant circumstances in assessing whether the failure to review was reasonable.  Rather, that rule dictates that failure to review is always and without exception unreasonable.  By closing off the "innocent spouse" exception to spouses who fail to review the tax return, the exception loses the flexibility necessary to effectuate its equitable purposes.  As the Tax Court has recognized, "The legislative history of section 6013 makes it plain that the statute was designed to bring government tax collection practices into accord with basic principles of equity and fairness."  LaBelle v. Commissioner of Internal Revenue, 47 T.C.M. (CCH) 1078, 1984 WL 15379, at *9 (U.S. Tax Ct. Feb. 13, 1984).

This court refuses to adopt a per se rule that "innocent spouse" status is unavailable to spouses who fail to review their tax returns.  Often, the "innocent spouse's" failure to review may be attributable to a division of labor in the marriage and

12

reasonable reliance on the spouse responsible for financial matters. This court agrees with the tax court in <u>Silverman</u> that whether the failure to review was reasonable is a question of fact. Here, the bankruptcy court found that Michaud's failure to review her tax returns was excusable and did not breach her duty of reasonable inquiry under the circumstances. Bankruptcy Rule 8013 provides that the bankruptcy court's "[f]indings of fact . . . shall not be set aside unless clearly erroneous." Aside from the previous argument on the law, the United States has presented no evidence on the record to indicate that the bankruptcy court was clearly erroneous and its holding in need of second-guessing.

Next, the United States contends that the bankruptcy court erred as a matter of law in finding that it would be inequitable to hold Michaud liable for the tax deficiencies attributable to the understatements on the 1980 and 1981 tax returns. A spouse seeking to qualify for "innocent spouse" relief must prove that it would be inequitable to hold her liable for the deficiency. The spouse bears the burden of proving all the elements of a claim for "innocent spouse" relief. <u>Friedman v. United States</u>, 53 F.3d 523, 532 (2d Cir. 1995). According to the United States, the bankruptcy court placed the burden of proof on the government with respect to the equity of holding Michaud liable for the

13

understatements, and this constituted error as a matter of law.

This court disagrees that the bankruptcy court erred in its legal conclusions.  The bankruptcy court considered whether Michaud financially benefited from the deficiency on the 1980 and 1981 returns as a factor bearing on the equity of holding her liable.  In assessing this factor, the bankruptcy court held "that there is insufficient evidence in the record to support such a finding . . . that [Michaud's] restaurant was the fruit of the improper deductions."  Order of Bankruptcy Court dated April 26, 1996, at 14.  According to the United States, this evidences the bankruptcy court's erroneous legal conclusion that the United States carried the burden of proof on this issue.  The relevant inquiry, according to the United States, was whether there was sufficient evidence to support a finding that the restaurant was not the fruit of the improper deductions.

However, the government's contention overstates Michaud's burden of proof.  Granted, Michaud had the burden of proving that it would be inequitable to hold her liable for the deficiencies.  This does not mean, as the United States' argument implies, that Michaud had the burden of proving every disputed issue of fact in her favor.  Rather, this inquiry is factual and open-ended.  "The 'facts and circumstances' that must be considered are those having a rational bearing on whether a putatively 'innocent

14

spouse' should be held liable for taxes and additions due."
Purificato v. Commissioner, 9 F.3d 290, 296 (3d Cir. 1993), cert.
denied, ___ U.S. ___, 114 S. Ct. 1398 (1994).  She only had the
burden of proving enough relevant facts to show by a
preponderance of the evidence that the equities weigh in her
favor.  Stevens v. Commissioner of Internal Revenue, 872 F.2d
1499, 1504 (11th Cir. 1989).  Once Michaud met her burden of
proof by a preponderance of the evidence, the United States had
the burden of proving facts alleged to defeat Michaud's claim for
"innocent spouse" relief.  The bankruptcy court found that
Michaud met her burden of proof by coming forward with the
following evidence.

> In this case, the Plaintiff testified that she
> received a weekly allowance to pay household
> expenses both before and after the filing of the
> 1980 and 1981 tax returns.  Early in the marriage
> the amount was $250 per week, it increased to $300
> per week in the late 1970s and eventually
> increased to $350 per week.  The Plaintiff also
> testified that she had no joint accounts with her
> husband and accumulated little savings during the
> marriage.  Her travel consisted of some cruises
> and trips to the Mediterranean, Bermuda, and
> Majorca.  Upon her divorce from her husband in
> 1991, she received title to the family home in
> Dover, New Hampshire, which had been held solely
> in his name; today it is the Plaintiff's only
> asset.  The IRS has taken the Plaintiff's IRA, her
> checking account, and the proceeds from a small
> house which was in her name.  She does not own an
> automobile.

Order of Bankruptcy Court, supra, at 13.  The United States

15

countered by arguing that Michaud benefitted from the deficiencies by running the restaurant in issue. This fact could not stand to defeat Michaud's showing that, by a preponderance of the evidence, it is inequitable to hold her liable unless the fact were proven. The bankruptcy court committed no legal error by placing the burden of proving this fact on the United States because it does not imply that the United States carried the burden of proof on this element of the "innocent spouse" claim. The only implication was that, once Michaud met her burden of proof on this issue, her claim for "innocent spouse" relief would not be defeated by unproven facts.

Finally, the United States argues that the bankruptcy court erred in granting "innocent spouse" relief to Michaud because there was no direct evidence that her husband spent the realized tax savings outside the household. The government relies on a footnote in Bliss v. Commissioner of Internal Revenue, 59 F.3d 374, 380 n.3 (2d Cir. 1995), which defined "innocent spouse" as one who is "innocent vis-à-vis a guilty spouse whose income is concealed from the innocent and spent outside the family." (Emphasis added.) However, it is not clear that the Bliss court was implying that proof that the income was spent outside the family is a necessary showing. Other courts have held that the focus is on whether the putative "innocent spouse" benefitted

16

from the tax savings, <u>Purificato</u>, <u>supra</u>, 9 F.3d at 296, and this factor is not even determinative. <u>Id.</u> Evidence that the money was spent outside the family is evidence that the "innocent spouse" did not benefit from the tax savings. However, it would be no more probative than evidence that the "innocent spouses" realized no improved standard of living. The bankruptcy court found that Michaud's standard of living did not improve, and this is legally sufficient to support a finding that she did not benefit from the tax savings, even in the absence of direct evidence that the money was spent outside the family. The bankruptcy court committed no legal error in finding that Michaud did not benefit from the tax savings.

Conclusion

For the foregoing reasons, the order of the bankruptcy is upheld in its entirety. The clerk shall enter judgment accordingly.

SO ORDERED.

                               _____
                               Shane Devine, Senior Judge
                               United States District Court

March 6, 1997

cc:    David L. Broderick, Esq.
        Carina J. Campobasso, Esq.
        Stephen C. Chute, Esq.
        Sarah Ruef Luck, Esq.
        George Vannah, Clerk, US Bankr. Ct.