HEANEY, Circuit Judge.
 

 Richard Lee Kearns, debtor in bankruptcy, appeals from a decision by the bankruptcy appellate panel ruling that the bankruptcy court was without subject matter jurisdiction to determine Kearns’ federal tax liability for the 1990 through 1994 tax years. The bankruptcy court had determined Kearns’ post-petition tax liability for the 1990,1991, 1992,1993, and 1994 tax years, permitting an offset against the proof of claim filed by the Internal Revenue Service (IRS) for 1989 federal income taxes. Because we conclude that the bankruptcy court had subject matter jurisdiction to determine Kearns’ tax liability, we now reverse.
 

 I.
 

 From 1975 Richard Lee Kearns was trustee of the Lincoln Land Trust, of which his wife, Carol Kearns, was one of four beneficiaries. In 1989 Kearns made three unauthorized disbursements of funds
 
 *708
 
 from the trust. First, Kearns withheld $460,000 of the proceeds realized on a February 1989 sale of trust land, using the money to purchase stock in Wen-Neb., Inc., an owner of Wendy’s restaurants in Nebraska. In April 1989 Kearns withdrew $24,508 from a trust bank account and used the money to repay a personal loan. Finally, in August of that same year,
 
 [2]
 
 he withdrew an additional $35,000 in trust moneys to repay a joint obligation owed by his wife and himself.
 

 The beneficiaries other than Kearns’ wife discovered the misappropriations in early 1990 and threatened legal action. On April 6, 1990, a settlement was reached between Kearns and the trust beneficiaries. Pursuant to the settlement, Wen-Neb., Inc., repurchased the stock from Kearns for $460,000 and Kearns assigned his interest in the proceeds to the beneficiaries other than his wife.
 
 [3]
 
 The two unauthorized disbursements were treated as trust distributions to Carol Kearns for tax purposes. Additionally, Carol Kearns, in an attempt to discourage criminal charges against her husband, gave up her entire interest in the trust.
 

 On August 24, 1990, Kearns filed for Chapter 11 bankruptcy. Following an examination of the debtor’s 1989 tax return, the IRS filed a proof of claim in the amount of $142,718. The amount of tax owed was based on the unreported 1989 embezzlement income of $519,508. Kearns objected to the characterization of the moneys as embezzlement income, claiming that the restitution agreement transformed the unauthorized withdrawals into loans. The bankruptcy court conducted a hearing on the issue and found, in a journal entry dated November 10, 1994, that Kearns had embezzled the funds and that the funds constituted income to him. The court further found, however, that Kearns had made restitution to the victims, thus giving rise to deductions for the years in which the restitution was made. The court, therefore, indicated that it would reconsider the IRS’s claim, insofar as deductions may be appropriate, upon a Bankruptcy Rule 3008 motion.
 

 After negotiating with the IRS for two years, Kearns filed a motion for reconsideration under Bankruptcy Rule 3008.
 
 See
 
 Fed.R.Bankr. P. 3008. In the motion, Kearns alleged that he was entitled to an offset against the IRS’s tax claim in an amount equal to the tax savings attributable to deductions taken for the restitution payments.
 
 [4]
 
 Additionally, Kearns claimed that since he and his wife filed joint income tax returns, he should be entitled to take a theft-loss deduction for amounts Carol Kearns had lost as a twenty-five percent beneficial owner of the trust and offset that amount against the 1989 tax liability. The bankruptcy court granted the motion and scheduled a trial.
 

 The IRS argued that Kearns’ claim for a restitution deduction was inappropriate because Kearns failed to file for the refund in the proper year and was barred by the statute of limitations.
 
 See
 
 26 U.S.C. § 6511(a). Additionally, the IRS asserted that since Kearns had not timely filed for a refund, the bankruptcy court lacked subject matter jurisdiction under 11 U.S.C. § 505(a)(2) to determine tax liability, including any offsets. The bankruptcy court rejected these arguments, finding in favor of Kearns on both issues. As an initial matter, the court concluded that the Kearns had already reported $59,508 of
 
 *709
 
 the embezzlement income on their 1989 tax return, and accordingly reduced the amount of unreported income to $460,000. The court then ruled that Carol Kearns was entitled to a theft-loss deduction of $129,877, representing her one-fourth share of the trust.
 
 [5]
 
 The court also ruled that Kearns was entitled to deductions for the restitution payments made in tax years 1990 through 1994 and allowed the resulting offset of $22,944 to be taken against the IRS’s allowed claim for income tax owing from the 1989 tax year.
 

 The United States, on behalf of the IRS, appealed to the Bankruptcy Appellate Panel for the Eighth Circuit (Panel). The IRS challenged allowance of the theft-loss deduction only as to amount, asserting that $35,000 of the embezzled funds had been used to satisfy an obligation for which Carol Kearns was jointly liable and thus could not be considered a loss. As to jurisdiction, the IRS again argued that the bankruptcy court lacked subject matter jurisdiction to make any determination of the joint tax liabilities of Kearns or his wife for tax years subsequent to 1989, both as to the theft loss and the claimed restitution payments, because no claim for refund had been filed for any of those years. The Panel agreed that the bankruptcy court lacked jurisdiction over tax years 1990 through 1994, vacated the bankruptcy court’s opinion, and remanded the matter with instructions to allow the IRS claim in its entirety.
 
 [6]
 
 The Panel did not address the issue of the theft-loss deduction.
 

 On appeal, Kearns argues that the bankruptcy court correctly determined that offsets were permissible both for the deductible amounts of Kearns’ restitution payments and the theft-loss deductions and properly calculated the amounts of those offsets. The IRS repeats its contention that the bankruptcy court lacked subject matter jurisdiction to determine tax liability in any year other than the 1989 tax year, the year for which a proof of claim was filed. In the alternative, the IRS asserts the Kearns failed to submit a claim for refund within the statutory period.
 

 II.
 

 A. Subject Matter Jurisdiction
 

 The United States is immune from suit except where Congress has waived that immunity.
 
 See United States v. Testan,
 
 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). “[T]he terms of [the United States’] consent to be sued in any court defines that court’s jurisdiction to entertain the suit.”
 
 United States v. Sherwood,
 
 312 U.S. 584, 586-87, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Section 505 of the Bankruptcy Code addresses the authority of bankruptcy courts to determine tax liability.
 
 [7]
 
 Section 505(a)(1) confers on bankruptcy courts jurisdiction to determine “the amount or legality of any tax ... whether or not previously assessed,
 
 *710
 
 ... paid, ... or ... contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.” 11 U.S.C. § 505(a) (1998). Excepted from this broad grant of jurisdiction is the authority to determine:
 

 any right of the estate to a tax refund, before the earlier of — (i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or (ii) a determination by such governmental unit of such request.
 

 11 U.S.C. § 505(a)(2)(B) (1998).
 

 The IRS notes that the language, “properly requests such refund,” incorporates provisions from the Internal Revenue Code (I.R.C.) governing application for income tax refunds.
 
 [8]
 
 Specifically, a “proper” request is one that, first, meets the filing requirements of I.R.C. § 7422(a), which provides, in relevant part, that “[n]o suit or proceeding shall be maintained in any court” for a tax refund “until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law [and regulations] in that regard.” Additionally, the I.R.C. establishes that a claim for an income tax refund must be filed within three years from the time the return was filed or two years from the time the tax was paid, whichever expires later.
 
 See
 
 I.R .C. § 6511(a).
 

 The Panel observed that although there is no issue of subject matter jurisdiction with respect to the tax year stated in the proof of claim, the law is “less clear” where the debtor seeks determination of tax liability for years other than that stated in the proof of claim.
 
 See In re Kearns,
 
 219 B.R. 823, 826 (8th Cir.BAP 1998); 11 U.S.C. § 106(b). Nonetheless, it ruled that absent the filing of a refund claim, there can be no subject matter jurisdiction over disputed, post-bankruptcy tax years.
 
 See id.
 
 at 828.
 

 While this is a plausible resolution of the issue, we cannot share an interpretation of the' Bankruptcy Code that precludes a debtor from having the benefit of carrying back deductions that are intimately related to the adjudged tax liability. In our view, the bankruptcy court correctly recognized the applicability in this case of a corollary to the rule that embezzled funds constitute income to the embezzler: “[T]o the extent that the victim recovers back the misappropriated funds, there is of course a reduction in the embezzler’s income.”
 
 James v. United States,
 
 366 U.S. 213, 220, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961) (quotation omitted). We do not read § 505 to preclude determi nation of how that reduction affects the debtor’s tax liability.
 
 See United States v. Wells,
 
 519 U.S. 482, 495, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997) (“[Courts] presume that Congress expects its statutes to be read in conformity with [the Supreme] Court’s precedents.”). Thus, we read § 505 to confer on the bankruptcy courts jurisdiction to determine tax liability beyond the year stated in the proof of claim when that liability involves deductions resulting from repayment of embezzled funds.
 

 This rule finds support in the case law.
 
 In re Dunhill Medical, Inc.,
 
 1996 WL 354696, at *1 (Bankr.D.N.J. March 27, 1996), involved an IRS allegation, on proof of claim, of taxes owing due to the debtor’s failure to remit quarterly employee withholding taxes and Federal Insurance Compensation Act (“FICA”) payments during the 1990 through 1992 tax years. The debtor asserted that because it had overpaid withholding and FICA taxes during the 1986 through 1991 tax years and be
 
 *711
 
 cause such payments could not be credited against taxes currently owing, it should be eligible for refund of such overpayments.
 
 See id.
 
 at *2.
 

 In ruling that the debtor was eligible to have the tax refund question determined, the court referred to legislative history establishing that where the refund is sought as an offset or counterclaim to a proof of claim by the IRS, there is no need first to submit a refund request.
 
 See id.
 
 at * 5 (citing 124 Cong.Rec. H11110-11 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards); 124 Cong.Rec. S17426-28 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini)). This congressional intent is reflected in the leading scholarly authority.
 
 See
 
 4 Collier on Bankruptcy ¶ 505.-LH[2][a], at 505-08 (Lawrence P. King ed., 15th rev. ed. 1999) (“[I]f the refund results from an offset or counterclaim to a claim or request for payment by the [IRS], or other tax authority, the trustee would not first have to file an administrative claim for refund with the tax authority.”). Relying on this history, the
 
 Dunhill
 
 court concluded that § 505 “permits a debtor to dispense with the IRS’s requirement of filing a claim for refund when a refund is sought as an offset or counterclaim to a proof of claim filed by the tax authority.” 1996 WL 354696, at *5. Subsequently, the Bankruptcy Court for the District of New Hampshire applied this same principle, stating that “[w]hen an IRS proof of claim and a taxpayer’s request for refund regard the same tax liabilities, it would be without purpose and irrational to deny the bankruptcy court jurisdiction to order a refund until the taxpayer makes a formal request for a refund from the IRS.”
 
 Michaud v. United States,
 
 206 B.R. 1, 5 (D.N.H.1997).
 

 Nor is the IRS’s contention that Kearns failed to file within the statute of limitations period set forth in I.R.C. § 6511 availing in this case. Section 6511(a) provides that a claim for a tax credit or refund owing from overpayment must be filed by the taxpayer within 3 years from the time the return was filed or within 2 years from the time the tax was paid, whichever is later.
 
 See
 
 26 I.R.C. § 6511(a). Because the statute of limitations is a jurisdictional requirement in suits against the United States, the defense may be raised at any time in the litigation.
 
 See Miller v. Tony & Susan Alamo Found.,
 
 134 F.3d 910, 916 (8th Cir.1998). However, if, when the claims of the IRS and a debtor involve the same tax liabilities, it is “without purpose and irrational” to deny jurisdiction over refunds absent a formal request by the debtor,
 
 Michaud,
 
 206 B.R. at 5, it would be doubly so to apply a statutory bar to the debtor’s claim for determination of tax liability.
 

 Finally, it is important to note that our resolution of this case does not detract from the policies of efficiency and conservation of resources underlying § 505. The requirement of exhausting administrative remedies as a precondition to invocation of the judicial process will continue to vindicate the important interest of affording the IRS an opportunity to consider fully the merits of the refund or credit claim before being required to expend resources in litigation.
 
 Cf. McNeil v. United States,
 
 508 U.S. 106, 112, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993). Where the IRS has filed a proof of claim, however, it has already committed itself to expending resources to resolve the taxpayer’s liability for a particular year.
 
 See Michaud,
 
 206 B.R. at 5. Here, the IRS and Kearns stipulated to facts concerning the tax implications of the restitution payments in the event that the court permitted the deductions. No additional burden is incurred by allowing the bankruptcy court to then adjudicate upon these facts.
 

 B. Theft-Loss Deduction
 

 The IRS appealed $35,000 of the $129,877 theft-loss deduction awarded by the bankruptcy court, contending that because that amount was used to pay off an obligation for which Carol Kearns was liable, it should not have been included in the
 
 *712
 
 court’s calculations.
 
 [9]
 
 The Panel, in vacating the- bankruptcy court’s opinion, failed to address that contention. We now find that the bankruptcy court was correct in awarding a theft-loss deduction in the amount of $129,877.
 

 The IRS’s argument, reasserted here, that determination of the theft-loss deduction is precluded by absence of subject matter jurisdiction, has been resolved above. In addition, the IRS urges that because the $35,000 was used to pay off a joint obligation, Carol Kearns did not suffer a loss. While this is technically correct, it misses the point. The Kearns had already paid tax on the $35,000. That amount represents a portion of the $59,508 in embezzlement income that the bankruptcy court found had been reported on the Kearns’ 1989 income. If Carol Kearns’ loss due to her husband’s embezzlement were reduced by $35,000, she would effectively be subject to double taxation on that amount. In effect, by conceding that the Panel erred by including the reported $59,-508 in its calculation of total embezzlement income, the IRS is admitting the untenable nature of its position.
 
 {See
 
 Appellee’s Br. at 36.) If the $35,000 was reported embezzlement income, the Kearns paid tax on it. If her deduction is disallowed in that amount, she would pay tax on it again. The IRS cannot have it both ways.
 

 III.
 

 Based on the foregoing, Kearns is entitled to take an offset against 1989 tax liability in an amount equal to the $22,944, representing deductions owing from restitution payments made in the 1990 through 1994 tax years. In addition, Carol Kearns is entitled to a theft-loss deduction in the amount $129,877. Accordingly, we reverse the Panel and remand to it with directions to remand to the bankruptcy court for further action consistent with this opinion.
 

 [2]
 

 . The bankruptcy appellate panel opinion erroneously implies that this withdrawal occurred in August 1990.
 
 See In re Kearns,
 
 219 B.R. 823 (8th Cir.BAP 1998).
 

 [3]
 

 . The three beneficiaries other than Kearns' wife received $178,000 in 1990, $68,000 in each 1991, 1992, and 1993, and $104,000 in 1994.
 

 [4]
 

 .In March 1997 the parties submitted a Joint Stipulation stating the amounts at issue. The parties agreed that based on the restitution made by Kearns, the federal income tax owed would be reduced by $22,944 in the event the court ruled in Kearns' favor.
 

 [5]
 

 . The court arrived at the $129,877 theft loss by taking twenty-five percent of the total amount of the embezzlement, a proportion equal to Carol Kearns’ interest in the trust. The $129,877 represented a net operating loss for 1990, the tax year during which the loss was discovered. However, the court ruled that the loss could be carried back to reduce the Kearns’ joint 1989 income, inclusive of the embezzlement income.
 

 [6]
 

 . In its opinion, the Panel apparently overlooked the fact that the IRS had not appealed the finding that $59,508 of the embezzlement income had already been reported on the Kearns' 1989 tax return.
 
 (See
 
 Appellee’s Br. at 5.)
 

 [7]
 

 .The IRS contends that 11 U.S.C. § 106(b)-(c) (1998) does not confer subject matter jurisdiction on the bankruptcy court to determine Kearns’ tax liability for the tax years 1990 through 1994 because the claim is neither “property of the estate” nor arising out of “the same transaction or occurrence." Because we find that Congress intended under § 505 to grant jurisdiction to the bankruptcy court to determine Kearns’ tax liability, we need not reach this question. Kearns asserts several additional bases for affirming the bankruptcy court's finding of jurisdiction. Because we resolve all issues under § 505, it is unnecessary to consider these arguments.
 

 [8]
 

 . Though Kearns sought a determination of tax liability as an original matter, since the bankruptcy court did not establish that Kearns had embezzled the funds until its journal entry of November 10, 1994, there is no difference for purposes of § 505 between a tax ‘'refund” and a tax "credit.”
 
 See In re Dunhill Med., Inc.,
 
 1996 WL 354696, at *4-*5 (Bankr.D.N.J. March 27, 1996);
 
 Baldwin v. Commissioner of Internal Revenue,
 
 97 T.C. 704, 707, 1991 WL 271588 (T.C.1991).
 

 [9]
 

 . Carol Kearns was eligible for a theft-loss deduction under l.R.C. § 165(a), which allows taxpayers to take a deduction for any loss sustained during the taxable year and not compensated by insurance or otherwise. While the other beneficiaries received restitution for the embezzled funds, Carol Kearns did not.