**In re FARMLAND INDUSTRIES, INC., et al., Debtors.**

No. 02–50557JWV.

United States Bankruptcy Court, W.D. Missouri.

Dec. 1, 2005.

Laurence M. Frazen, William Jeffrey Maloney, Michelle M. Masoner, Tammee

**416**

E. McVey, Cynthia Dillard Parres, Staci O. Schorgl, Mark G. Stingley, Robert M. Thompson, Cassandra L. Writz, Bryan Cave LLP, Michael D. Hockley, Spencer Fane Britt & Browne, Kansas City, MO, Frank W. Lipsman, Morton Hubbard Ruzicka & Kreamer, Olathe, KS, Thomas R. Graham, King & Spalding LLP, Washington, DC, Chris Leason, Gallagher & Kennedy, P.A., Phoenix, AZ, James P. Zakoura, Smithyman & Zakoura, Overland Park, KS, for Debtors.

## MEMORANDUM OPINION

JERRY W. VENTERS, Bankruptcy Judge.

The issue presently before the Court is whether a bankruptcy court has the authority under 11 U.S.C. § 505 to determine whether a debtor is entitled to seek a refund for overpaid state or local taxes when the debtor has not complied with state law procedures for requesting a refund.

J.P. Morgan Trust Company, N.A., it its capacity as trustee for the FI Liquidating Trust ("F.I.L.T."), filed a motion on May 9, 2005, seeking a determination, pursuant to 11 U.S.C. § 505, that it is entitled to a refund of $4,146,251 in *ad valorem* taxes that the Debtor, Farmland Industries, Inc. ("Farmland"), paid to Montgomery County, Kansas ("Montgomery County"), allegedly in excess of the proper tax liability. Montgomery County opposed the motion and asked the Court to bifurcate the hearing on F.I.L.T.'s motion, arguing that the bankruptcy court only has the authority to determine a debtor's tax liability under § 505 if the debtor or successor entity (in this case, F.I.L.T.) followed the state law procedures for contesting tax liability, and noting that F.I.L.T. has admitted that those procedures were not followed with regard to the taxes at issue.[1] Therefore, Montgomery County contended, a hearing on the merits of F.I.L.T.'s motion would only be necessary if the Court determined that it has the authority to make the determination F.I.L.T.'s motion seeks. F.I.L.T. stipulated to the bifurcated procedure, but denied that § 505 requires a debtor to adhere to state law procedures as a jurisdictional condition precedent to obtaining relief under § 505.

The Court held a hearing on the jurisdictional issue in accordance with the bifurcated procedure on October 17, 2005, at which time the parties offered evidence and argument in support of their respective positions.

Upon consideration of the evidence, arguments, and relevant law, the Court finds that 11 U.S.C. § 505(a)(2)(B) precludes the Court from determining F.I.L.T.'s right to a tax refund of alleged tax overpayments because the Debtor and F.I.L.T. failed to follow state law procedures for contesting Farmland's tax liability on the Refinery Property.

## BACKGROUND

The facts are straightforward and uncontested.

1. The Montgomery County Appraiser's office determined that the value of the

---

1. F.I.L.T.'s motion seeks a total refund of $4,146,251. Of that amount, $3,155,122 relates to the 2001, 2002, and 2003 *ad valorem* taxes on the personal and real property constituting the Debtor's refinery facility ("Refinery Property"), and $961,030 relates to certain property leased from General Electric Capital Corporation ("Leased Property").

Montgomery County concedes that the Debtor filed timely grievances for taxes paid on the Leased Property and that the Court has the authority to rule on the merits of that portion of F.I.L.T.'s request. Thus, the holding here only affects F.I.L.T.'s request for a refund of the $3,155,122 of taxes paid without protest on the Refinery Property.

Refinery Property was $34,549,918 in 2001, $34,989,293 in 2002, and $32,872,527 in 2003.

2. These values were not contested pursuant to an equalization appeal under K.S.A. § 79–1448.

3. The taxes based on the values assessed were paid in full without a protest under K.S.A. § 79–2005.

4. The Debtor filed for protection under Chapter 11 of the Bankruptcy Code on May 31, 2002.

5. On or about December 21, 2004, F.I.L.T. sent Montgomery County a letter demanding a refund of $4,146,251 of the *ad valorem* taxes paid by the Debtor or F.I.L.T. between 2001–2003.

6. Montgomery County declined to refund the taxes demanded by F.I.L.T.

7. F.I.L.T. filed its motion for determination and refund of overpaid taxes pursuant to 11 U.S.C. § 505 on May 9, 2005.

### DISCUSSION

This dispute turns entirely on the definition to be accorded to the word "properly" as it is used in § 505(a). The statute provides, in pertinent part:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or

administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title;

(B) any right of the estate to a tax refund, before the earlier of—

(I) 120 days after the trustee *properly* requests such refund from the governmental unit from which such refund is claimed; or

(ii) a determination by such governmental unit of such request. (emphasis added).

11 U.S.C. § 505(a).

Montgomery County offers the straightforward and well-supported[2] argument that the word "properly" connotes "correctness and dictates conformity with the pertinent taxing authority's mechanism for seeking a refund." Therefore, Montgomery County and the cases it cites conclude that a court lacks authority under § 505 to determine whether a debtor is entitled to seek a refund for overpaid taxes, unless the debtor has complied with state law procedures for requesting a refund.

█ Under Kansas law, a taxpayer must follow specific procedures to request a refund for allegedly overpaid taxes, and a failure to do so results in forfeiture of that right.[3] The statute provides:

---

**2.** *See In re Custom Distribution Services Inc.,* 224 F.3d 235 (3d Cir.2000); *In re St. John's Nursing Home, Inc.,* 169 B.R. 795 (D.Mass. 1994); *In re ANC Rental Corp.,* 316 B.R. 150 (Bankr.D.Del.2004); *In re Constable Terminal Corp.,* 222 B.R. 734 (Bankr.D.N.J.1998); *In re Penking Trust,* 196 B.R. 389 (Bankr.E.D.Tenn. 1996); *In re EUA Power Corp.,* 184 B.R. 631

(Bankr.D.N.H.1995); *In re Cumberland Farms, Inc.,* 175 B.R. 138 (Bankr.D.Mass. 1994); *In re Millsaps,* 133 B.R. 547 (Bankr. D.Fla.1991) *aff'd,* 138 B.R. 87 (M.D.Fla.1991). *See also, U.S. v. Kearns,* 177 F.3d 706 (8th Cir.1999).

**3.** *See Regency Park, LP v. City of Topeka,* 267 Kan. 465, 981 P.2d 256, 263 (1999) ("[B]efore

Any taxpayer, before protesting the payment of such taxpayer's taxes, shall be required, either at the time of paying such taxes, or, if the whole or part of the taxes are paid prior to December 20, no later than December 20, or, with respect to taxes paid in whole on or before December 20 by an escrow or tax service agent, no later than January 31 of the next year, to file a written statement with the county treasurer, on forms approved by the state board of tax appeals and provided by the county treasurer, clearly stating the grounds on which the whole or any part of such taxes are protested and citing any law, statute or facts on which such taxpayer relies in protesting the whole or any part of such taxes.[4]

F.I.L.T. does not dispute that it failed to follow these procedures with regard to the 2001–2003 Refinery Property taxes. Accordingly, Montgomery County argues, the bankruptcy court does not have the authority to consider F.I.L.T.'s request for a refund of those taxes.

F.I.L.T., on the other hand, maintains that "properly" does not mean "in compliance with state procedural requirements;" rather, F.I.L.T. argues that "properly" should be given a plain, ordinary meaning, which in this context connotes "providing sufficient data, information and explanation to the tax office in question, including identifying the property involved and the legal and factual basis for the request, that the tax office can reasonably understand and consider the merits of the request."[5]

F.I.L.T. offers several thoroughly argued and creative arguments as to why the Court should adopt its definition of "properly" for purposes of § 505, but, ultimately, none of these arguments is persuasive.

Aside from the fact (discussed below) that the Court interprets "properly" as unambiguously requiring correctness and conformity with the pertinent taxing authority's mechanism for seeking a refund, the most significant reason why the Court declines to adopt F.I.L.T.'s interpretation of § 505 is because this Court is bound by the precedent set forth in the Eighth Circuit Court of Appeals's decision in *Kearns*.[6]

In *Kearns*, the Circuit Court considered whether a debtor was eligible to have a federal tax refund question determined where the debtor had failed to file a request for a refund in accordance with I.R.S. procedures. The *Kearns* Court ultimately determined that § 505(a)(2)(B) did not restrict the authority of the bankruptcy court to consider the debtor's request, but it did so by carving out a narrow exception for requests of refunds where the "refund is sought as an offset or counterclaim to a proof of claim by the IRS . . . ."[7] It did *not* do so by rejecting the definition of "properly" as "in accordance with the requirements of applicable taxing authority." The court emphasized the circumscribed nature of its ruling, stating:

Finally, it is important to note that our resolution of this case does not detract

---

a refund of tax may be considered, the correct statutory procedure [has] to be followed."); *State v. Bd. of County Commissioners of Marshall County*, 172 Kan. 601, 242 P.2d 527, 532 (1952) (Payment under protest procedures "must be carefully followed before an action may be brought to recover taxes paid.").

**4.** K.S.A. 79–2005(a).

**5.** F.I.L.T.'s definition conveniently omits one other characteristic that would also generally be subsumed within the definition of properly—that is, "timely."

**6.** 177 F.3d 706 (8th Cir.1999).

**7.** *Id.* at 711.

from the policies of efficiency and conservation of resources underlying § 505. The requirement of exhausting administrative remedies as a precondition to invocation of the judicial process will continue to vindicate the important interest of affording the IRS an opportunity to consider fully the merits of the refund or credit claim before being required to expend resources in litigation.[8]

■ Based on this comment and a review of the case law cited by the *Kearns* Court,[9] this Court concludes that § 505(a)(2)(B) requires compliance with the procedures of the applicable taxing authority as a condition to the bankruptcy court's authority to determine the merits of a debtor's request for tax refunds in all situations other than the narrow exception presented in *Kearns*.

F.I.L.T. dismisses the Circuit Court's comment by suggesting that a "proper," *i.e.,* "well documented," request for a refund made 120 days before a debtor petitions a bankruptcy court for a determination on the refund requested satisfies the court's concerns for efficiency and conservation of resources underlying § 505, and meets the requirement of exhausting administrative remedies. But F.I.L.T.'s suggestion misses the obvious import of the *Kearns* Court's comment and, moreover, is directly contrary to the language used by the Circuit Court.

■ Specifically, F.I.L.T.'s suggestion that its untimely but well-documented request to Montgomery County exhausted the F.I.L.T.'s "administrative remedies" twists and eviscerates the meaning of that term. Black's Law Dictionary defines "administrative remedy" as the "procedure for allowing [a] person to assert a right to some kind of relief before an administrative agency."[10] This definition assumes that the procedure followed is the one required *by the administrative agency* to assert the right of relief before that agency. Thus, the "exhaustion" of administrative remedies implies full compliance with those procedures. Under this definition, which is the only one that makes sense within the context of *Kearns*,[11] and in the larger legal context as well, F.I.L.T.'s untimely request for a tax refund from Montgomery County did not exhaust F.I.L.T.'s administrative remedies such that it could seek redress from the bankruptcy court under § 505. As noted above, Kansas law provides a procedure by which a taxpayer may seek the *remedy* of a reconsideration of its tax liability, but neither the Debtor nor F.I.L.T. chose to follow the procedures necessary to avail themselves of that administrative remedy. F.I.L.T. cannot escape the ramifications of its inaction by redefining "proper" and "administrative remedy" out of whole cloth to suit its needs.

■ Even in the absence of controlling authority on this issue, the Court would

---

**8.** *Id.*

**9.** The Court of Appeals cites *In re Dunhill Medical, Inc.,* 1996 WL 354696 (Bankr.D.N.J. 1996), as an example of another court allowing a debtor to seek a refund under § 505 despite its failure to timely request a refund from the I.R.S. As in *Kearns*, the dispositive fact in *Dunhill* warranting an "exception" to § 505(a)(2)(B)'s requirement that a debtor observe the procedures of the pertinent taxing authority was that the refund was sought as

an offset or counterclaim to a claim filed by the I.R.S.

**10.** *Blacks Law Dictionary,* 46 (6th ed.1990).

**11.** Adopting the approach to "administrative remedy" proposed by F.I.L.T., would lead to the absurd result of parties dictating for themselves what is necessary to exhaust administrative remedies—which is, essentially, what F.I.L.T. has attempted to do here.

find that "proper" connotes correctness and conformity with the pertinent taxing authority's mechanism for seeking a refund.

As noted above, the Court does not find that the term "proper" as it is used in § 505(a)(2)(B) to be ambiguous.[12] Could Congress have drafted the statute more precisely by adding more words? Perhaps. But additional verbiage is unnecessary. Just as in the use of the word "timely"—which appears some 80 or so times in the bankruptcy code without further definition—the meaning of "proper" is determined by the context in which it appears. When a bankruptcy code provision requires "timely" action, it is understood that, in most cases, timeliness is determined by reference to other code sections, the Federal Rules of Bankruptcy Procedure, or much like the case here, deadlines set by a taxing authority [13]—even though there is no specific definition of "timely" in the text of the provision.

Similarly, it is clear from the context of § 505(a)(2)(B) that the propriety of a request for a refund is to be determined by the taxing authority to which the request is made. F.I.L.T.'s suggestion that an amorphous standard of completeness and thoroughness can be used to define "properly" ignores the context in which it appears. Further, it defies common sense. F.I.L.T.'s proposed definition of "properly" is arbitrary and would undoubtedly invite litigation over the quality and content of allegedly "proper" requests.

Having determined that § 505(a)(2)(B) is not ambiguous, the Court does not need to address F.I.L.T.'s legislative history and policy arguments.[14] The Court does note, though, that F.I.L.T.'s argument that Montgomery County's proposed interpretation of "properly" should not be adopted because it is inimical to § 505's alleged purpose of providing a remedy for debtors who were unable to effectively challenge excessive tax assessments due to the incapacity of the insolvent debtor is unpersuasive because most of the refunds being sought here are for postpetition taxes paid by the Debtor or F.I.L.T., who both had the protection of bankruptcy and the assistance of a cadre of experienced attorneys.

The Court also rejects F.I.L.T.'s argument that Montgomery County's interpretation of § 505 impermissibly allows a substantive federal right to be abridged by state procedural law. Admittedly, several courts have adopted this line of reasoning,[15] but this Court does not find it persuasive for the simple reason that there is no conflict between federal substantive law and state law procedure because, as discussed above, § 505(a)(2)(B) unambiguous-

---

12. *See In re St. John's Nursing Home, Inc. v. City of New Bedford* (*St. John's Nursing Home, Inc.*), 169 B.R. 795, 802 (D.Mass.1994) ("I find the 'plain meaning' of the injunction in § 505(a)(2)(B) that a refund be 'properly request[ed]' to require compliance with all the applicable refund procedures...."); *In re Penking Trust*, 196 B.R. 389, 396 (Bankr. E.D.Tenn.1996).

13. *See, e.g.,* 11 U.S.C. § 523(a)(8).

14. "Our role is to interpret the language of the statute enacted by Congress. This statute does not contain conflicting provisions or ambiguous language. Nor does it require a nar-

rowing construction or application of any other canon or interpretative tool. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 461, 122 S.Ct. 941, 956, 151 L.Ed.2d 908 (2002) (citing *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)).

15. *See, e.g., In re Blue Cactus Post, L.C.*, 229 B.R. 379 (Bankr.N.D.Tex.1999).

ly incorporates state law, ostensibly procedural limitations on the Court's authority to review debtors' requests for tax refunds.[16] Moreover, the federal substantive/state procedural distinction would be irrelevant whenever the request involved a refund requested from the I.R.S. And there is nothing in the statute to indicate that a bankruptcy court's authority to determine a tax refund request hinges on the identity of the taxing authority from which the refund is sought.

## CONCLUSION

In sum, for the reasons stated above, the Court finds that the term "properly" in 11 U.S.C. § 505(a)(2)(B) dictates conformity with the pertinent taxing authority's mechanism for seeking a refund. F.I.L.T. and its predecessors in interest failed to request a refund of the 2001–2003 taxes on the Refinery Property in accordance with Montgomery County's and Kansas state law's mechanisms for seeking a refund. Therefore, this Court does not have the authority to review F.I.L.T.'s request for a refund of those taxes, and no hearing on the merits of F.I.L.T.'s request is necessary. The Court will schedule a status conference to discuss further proceedings on F.I.L.T.'s request for a refund of taxes on the Leased Property.

A separate order consistent with this Memorandum Opinion will be entered pursuant to Fed. R. Bankr.P. 9021.

---

16. The Court uses the term "ostensibly procedural" here because the Court is also not persuaded that the Kansas law requirement that a taxpayer timely protest its tax liability is a state "procedural" law such that it is trumped by federal substantive law. "The meaning of 'substance' and 'procedure' in a particular context is 'largely determined by the purposes for which the dichotomy is drawn ...' For purposes of *Erie R. Co. v. Tompkins*, for example, statutes of limitations are treated as substantive." In this case, the requirement that a taxpayer pay its taxes under protest in order to preserve its right to administratively or judicially contest its tax liability operates similarly to a statute of limitation.